**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. _____

YAEL ABUROS, individually and
on behalf of others similarly-situated,

            Plaintiff,

v.

APPLE INC.

            Defendant.

CLASS ACTION

**COMPLAINT**

Plaintiff, Yael Aburos, individually and on behalf of others similarly situated, brings this class action lawsuit against Defendant, Apple Inc. ("Apple"), for its unlawful conduct in pushing a software "upgrade" onto existing iPhone device owners which seriously degraded the battery life of the device, dramatically reducing its use as a mobile device.

**NATURE OF THE ACTION**

1. This action is brought on behalf of owners of Apple iPhone devices who accepted Apple's invitation to download one or more iOS 11 Software Updates onto their existing iPhone device which had the effect of seriously degrading the battery life on their device.

2. As a result of the deleterious effect of the iOS 11 "upgrade," many such owners, like Plaintiff, junked their existing iPhone and purchased newly available iPhone 8 or X series devices in order to have a reliable mobile device.

3. Apple knew or should have known of the serious negative impact iOS 11 would have on the battery life of existing iPhones, yet the company took no action to warn owners

against downloading the software update, nor to provide a fix such as allowing a downgrade to purge the offending iOS 11 software from affected devices.

## PARTIES

4. Plaintiff, Yael Aburos, is a resident of the Town of Bay Harbor Islands, located in Miami-Dade County, Florida.

5. Defendant, Apple Inc., is a California corporation headquartered in Cupertino, California, which designs and markets its iPhone devices throughout the United States.

## JURISDICTION AND VENUE

6. This is a class action, on behalf of more than one hundred putative class members, for damages that exceed $5,000,000.00, exclusive of interest and costs.

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d).

8. Defendant is subject to personal jurisdiction in Florida because it directed its flawed iOS 11 Software Update to existing iPhone device owners whom it knew were located in Florida, with the intent that the software "update" Plaintiff's iPhone in Florida – an unlawful act – and because Apple engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.

9. Venue is proper within this District because a substantial part of the events giving rise to the claims occurred in this District, namely that Apple pushed its iOS 11 Software Update to Plaintiff's iPhone in Florida.

## GENERAL ALLEGATIONS

10. Beginning sometime in 2016, by its own recent admission, Apple secretly began including a feature which had the effect of throttling the performance of iPhone devices in the iOS Software Updates, also known as "Apple security updates," that it offered to iPhone users.

2

11. When Defendant releases a new operating system, it pushes the software directly to the customers' iPhones through a red signal that notifies users of the existence of an available "software update." Within minutes, device owners can click on the prompt and download the new operating system.

12. Apple knew of the adverse effects its throttling software had on iPhone performance but did not disclose its existence until December 20, 2017, well after Plaintiff, along with millions of other users, downloaded the software.

13. At all times material, Apple's push messages and other product information was disseminated by Apple from its corporate headquarters in California.

### A. Apple's iOS 11 contains a concealed battery-life killer.

14. Apple released iOS 11 on September 19, 2017.

15. Apple represented on its website, and generally, that "iOS 11 is compatible with" the following iPhone devices which predated the release of iOS11: iPhone 5s, iPhone SE, iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, iPhone 7, and iPhone 7 Plus. https://support.apple.com/en-us/KM207938 (last visited December 21, 2017). (These iPhone devices shall be referred to as "existing iPhones.")

16. On or about September 15, 2017, Apple began accepting orders for its latest generation of iPhone devices, the iPhone 8 and iPhone 8 Plus. Those devices were first made available for sale on or about September 22, 2017. Apple released the iPhone X for sale on or about November 3, 2017.

17. Immediately upon downloading iOS 11, existing iPhone users, like Plaintiff, began to experience a marked decrease in battery life on their devices.

3

18.     One study of thousands of iPhone users within a monitored network compared the relative battery life of existing iPhones operating on iOS 10 versus iOS 11.  The chart below shows the rate at which an iPhone with a fully charged battery loses battery power:



Source: https://wandera.com/blog/ios-11-battery-drain/.

19.     This study revealed that existing iPhones operating on the iOS 10 software on average drained to 0% battery after 240 minutes (4 hours), whereas those operating on iOS 11 on average drained to 0% battery after only 96 minutes (just over 1½ hours). In other words, iOS 11 reduced the average iPhone's battery life by more than 60%.

20.     Apple's brief description of the software update for iOS 11 said nothing about the effect of the update on battery life.  Apple did not disclose this serious adverse effect iOS 11 would have on the battery life of existing iPhones.

21.     In fact, during the relevant time period, Apple misleadingly represented that its operating system updates would *improve* iPhone battery life.

22.     Apple maintained on its website, at all relevant times, the following "Performance Tip" for "Maximizing Battery Life and Lifespan":

4

> **Update to the latest software.**
> Apple software updates often include advanced *energy-saving technologies, so always make sure your device is using the latest version of iOS* . . .

https://www.apple.com/batteries/maximizing-performace/ (last visited December 21, 2017) (emphasis added).

23. Apple knew, or should have known, that iOS 11 would have the exact opposite effect on existing iPhones.

24. Shortly after the release of iOS11, complaints from existing iPhone users mounted about newfound, terrible battery life.

25. On information and belief, Apple was aware of these complaints, yet did not admit to the software problem.

26. Nor did Apple notify users of the option of purchasing a new battery for their existing iPhone, at a typical cost of $79.

27. Instead, Apple welcomed owners of existing iPhones to upgrade to a new iPhone 8 or X, at a cost between $699 to over $1000.

28. Apple subsequently released several subsequent versions of its iOS 11 software update: iOS 11.0.1 on September 26, 2017; iOS 11.0.2 on October 3, 2017; iOS 11.0.3 on October 11, 2017; iOS 11.1 on October 31, 2017; iOS 11.1.1 on November 9, 2017; iOS 11.1.2 on November 16, 2017; iOS 11.2 on December 2, 2017; and iOS 11.2.1 on December 13, 2017.

29. On information and belief, the battery-life problem which iOS 11 caused in existing iPhones is the same or similar for the subsequently released versions of iOS 11. Therefore, all references in this Complaint to "iOS 11" also include these subsequent versions of the operating software.

5

30. Apple prevented owners of existing iPhones from escaping the problem caused by iOS 11 by removing the option of downgrading the operating system back to iOS 10.3.3. While that solution was feasible, Apple stopped "signing" code for iOS 10.3.3, thereby blocking the software escape route from iOS 11.

### B. Plaintiff's similar experience.

31. Plaintiff Yael Aburos's experience was consistent with that depicted in the study referenced above.

32. In 2017, she owned an iPhone 6. Prior to accepting Apple's iOS 11 software update, the battery on her iPhone 6 could charge to 100% and lasted for hours before losing its charge.

33. After downloading the iOS 11 software, however, the battery life on her iPhone 6 dropped precipitously. Her iPhone would now only charge to 80% capacity, and the battery would plummet during the course of a single phone call down to 0% and "die."

34. As a result of the inconvenience of not having a reliable cellular telephone, Plaintiff felt compelled to purchase a new iPhone 8 Plus, at a cost of around $800.

35. Plaintiff was content with the functionality of her iPhone 6 prior to downloading iOS 11 and would not have purchased the iPhone 8 Plus but for the battery-life problems caused by iOS 11.

## CLASS ACTION ALLEGATIONS

### Class Definitions

36. Under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff bring this action on behalf of herself and a class of all those similarly situated defined as follows:

6

> National Class: All owners or former owners of existing iPhone devices in the United States who downloaded iOS 11, or a subsequent version thereof.

37. Plaintiff also brings this action on behalf of herself and all those similarly situated within the following subclasses:

> Florida Subclass: All Florida-resident owners or former owners of existing iPhone devices who downloaded iOS 11, or a subsequent version thereof.

> National Unjust Enrichment Subclass: All former owners of existing iPhone devices in the United States who downloaded iOS 11, or a subsequent version thereof, and then purchased a replacement iPhone 8, iPhone 8 Plus, or iPhone X.

38. Excluded from the Class and Subclasses are Apple and its employees, officers, directors, legal representatives, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

39. The Class and Subclasses can be readily identified from Apple's records of iPhone owners. For instance, when iPhones are activated, and when various functions are performed on them, including downloading an iOS Software Update, the device transmits and Apple receives, collects and maintains, both a "unique hardware identifier" for the iPhone as well as "unique account identifiers" associated with the owner's Apple ID. *See*, *e.g.*, Ex. A at 2, § 2(b).

**Numerosity**

40. There are millions of existing iPhone device owners in the United States. As of December 4, 2017, according to Apple, 59% of all Apple devices are running iOS 11. *See* https://developer.apple.com/support/app-store/ (last visited December 27, 2017).

7

41.   Consequently, the number of Class members is great enough that joinder is impracticable.

## Typicality

42.   Plaintiff's' claims are typical of the claims of the Class and the Subclasses. Like members of the Class, Plaintiff owned an existing iPhone and downloaded iOS 11. Like all members of the Class, Plaintiff then experienced a reduction in the battery life of her iPhone.

43.   Like all members of the Florida Subclass, Plaintiff suffered actual damages when the functionality of her existing iPhone was severely impaired by downloading iOS 11 in Florida.

44.   And like the members of the Unjust Enrichment Subclass, Plaintiff responded to the newfound battery problem caused by iOS 11 by junking her existing iPhone and purchasing a new one from Apple, conferring upon Apple an unjustly earned monetary benefit.

## Adequacy of Representation

45.   Plaintiff will fairly and adequately protect the Class and Subclasses' interests and has retained counsel competent and experienced in class-action litigation. Plaintiffs' interests are coincident with, and not antagonistic to, absent Class and Subclass members' interests because by proving her individual claims, she will necessarily prove the liability of Apple to the Class and Subclasses as well. Plaintiff is also cognizant of, and determined to, faithfully discharge her fiduciary duties to the absent Class and Subclass members as their representative.

46.   Plaintiffs' counsel have substantial experience in prosecuting class actions. Plaintiff and counsel are committed to vigorously prosecuting this action, have the financial resources to do so, and do not have any interests adverse to the Class or Subclasses.

8

**Commonality and Predominance**

47. There are numerous questions of law and fact the answers to which are common to each Class and Subclass and predominate over questions affecting only individual members, including the following:

    a) Whether iOS 11 degraded the battery life of all existing iPhones;

    b) Whether Apple breached its iOS Software License Agreement by providing a software "update" that degraded the battery life of existing iPhones to the point that they could not reasonably be used as mobile devices;

    c) Whether Apple's pushing of iOS 11 to owners of existing iPhone devices constitutes a breach of the covenant of good faith and fair dealing;

    d) Whether Apple's pushing of iOS 11 to owners of existing iPhones constitutes an unfair or deceptive act or practice;

    e) Whether Apple's failure to warn owners of existing iPhones that acceding to Apple's push to iOS 11 would substantially degrade the battery life of existing iPhones constitutes a deceptive, unfair, or unlawful business practice proscribed by Florida and/or California law;

    f) Whether Apple's failure to notify owners of existing iPhones who downloaded iOS 11 that replacing the battery on their device offers a cheaper remedy than purchasing a new iPhone constitutes an unfair or deceptive act or practice;

    g) Whether Apple's decision to preclude owners of existing iPhone devices who downloaded iOS 11 to downgrade their devices back to iOS 10.3.3. constitutes an unfair or deceptive act or practice; and

    h) Whether Plaintiff and the National Unjust Enrichment Subclass members are entitled to disgorgement or restitution of the monies paid to Apple for the purchase of a replacement iPhone which they would not otherwise have purchased but for the deleterious effect of iOS 11 on their then-existing iPhones.

9

**Superiority and Manageability**

48. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the individual Class and Subclass members is impracticable. Likewise, because the damages suffered by each individual Class member are relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class or Subclass members to redress the wrongs done to each of them individually, and the burden imposed on the judicial system would be enormous.

49. The prosecution of separate actions by the individual Class or Subclass members would also create a risk of inconsistent or varying adjudications. The conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class or Subclass member.

**COUNT I**

**Violation of the Florida Deceptive and Unfair Trade Practices Act**

50. Plaintiff repeats and re-alleges the allegations in paragraphs 1 to 49 above as if fully set forth herein.

51. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits persons from engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

52. Apple's pushing of its iOS 11 software update to owners of existing iPhones constitutes an "unfair," "deceptive," and/or "unconscionable" act or practice in violation of Fla. Stat. § 501.204.

Podhurst Orseck, P.A.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Ft Lauderdale 954.463.4346            www.podhurst.com

53. Specifically, Apple's conduct was "unfair," "deceptive," and/or "unconscionable" in one or more of the following ways:

   a) Pushing a software "upgrade" on owners of existing iPhones that renders their device effectively useless because the software so markedly degrades its battery life;

   b) Despite knowing, of being in a position where it should have known, of this harmful effect of iOS 11, Apple did not warn owners of existing iPhones of the risk that the their device's battery life would be severely impaired by downloading the software update;

   c) Affirmatively misrepresenting that its operating system updates have "energy-saving technologies," so that to "[m]aximize [b]attery [l]ife," owners of existing iPhones should "always make sure [their] device is using the latest version of iOS," when that is not true for iOS 11;

   d) Blocking owners of existing iPhone devices who downloaded iOS 11 from escaping the deleterious effects of iOS 11 on their device's battery through a downgrade back to iOS 10.3.3; and

   e) Marketing new iPhone 8 and X devices without also marketing the availability of replacement batteries as a cheaper fix for an adversely affected existing iPhone.

54. The above-referenced statements and/or omissions would be material to a reasonable person, like Plaintiff, and would likely affect their decisions to accept Apple's suggestion to download iOS 11 and/or to purchase a new iPhone as a replacement. As a result, Apple has engaged in deceptive acts or practices in violation of the FDUTPA.

55. Based on the foregoing, Apple's actions or omissions caused or are likely to cause substantial injury to persons that they could not reasonably avoid themselves and that is not outweighed by countervailing benefits to persons or competition; or Apple's actions or omissions offend established public policy and are unethical, oppressive, unscrupulous or substantially

11

injurious to persons. As a result, Apple has engaged in unfair acts or practices in violation of the FDUTPA.

56. As a result of Apple's unfair, deceptive and/or unconscionable practices, Plaintiff and the Class and Subclass members have been aggrieved and have suffered, or will suffer, actual damages resulting from their loss of use of their existing iPhones and subsequent purchase of a new replacement iPhone.

57. In addition to their actual monetary damages, Plaintiff and the Class are also entitled, pursuant to Fla. Stat. § 501.211(1), to the following non-monetary relief:

   a) a permanent injunction to prevent Apple from continuing to push iOS 11 to existing iPhone device owners without appropriate warnings concerning the deleterious effect on battery life;

   b) a permanent injunction to compel Apple to notify owners of existing iPhones that the battery problem caused by iOS 11 can be remedied by replacing the existing battery;

   c) a declaratory judgment that Apple's conduct violates the FDTUPA.

58. Plaintiff and members of the Class and Subclasses are entitled to actual damages and all other relief allowable under the FDUTPA, including the recovery of costs and reasonable attorneys' fees in pursuing these claims.

## COUNT II

### Unjust Enrichment

59. Plaintiff repeats and re-alleges the allegations in paragraphs 1 to 49 above as if fully set forth herein.

60. When Plaintiff and members of the National Unjust Enrichment Subclass purchased a new iPhone as a replacement for their existing device that was ruined by downloading iOS 11, they conferred a benefit upon Apple.

12

61. Apple accepted and retained this benefit.

62. Under the circumstances described above, it would be inequitable for Apple to be permitted to retain the benefit of the revenue it has received from the same of replacement iPhones to Plaintiff and members of the National Unjust Enrichment Subclass.

63. Accordingly, Plaintiff and the National Unjust Enrichment Subclass seek disgorgement and/or restitution of these unjustly conferred financial benefits.

## COUNT III

### Breach of Contract

64. Plaintiff repeats and re-alleges the allegations in paragraphs 1 to 49 above as if fully set forth herein.

65. Apple requires everyone who downloads iOS 11 to agree to the terms of a contract: its iOS Software License Agreement. *See* Exhibit A.

66. In the iOS Software License Agreement, Apple permits the iPhone device owner "to *use* the iOS Software on a single Apple-branded iOS Device." Ex. A at 1, § 2(a) (emphasis added). In addition to Apple's promise that the software can be "use[d]" on the iPhone device, which is in part a "mobile phone[]," Apple also promises that the iOS Software Updates will "update or restore the software" on the iPhone device. *Id*. at 2, §§ 2(b), (j).

67. Plaintiff performed her obligations under the iOS Software License Agreement for iOS 11.

68. Apple breached its iOS Software License Agreement for iOS 11 by providing software that could not be "used" as intended since the operating system software killed the battery life of the device, rendering it effectively inoperable, particularly as a "mobile" device.

13

69. Apple further breached its iOS Software License Agreement for iOS 11 by providing software that could did not "restore" the software on existing iPhones. Rather, the iOS 11 software degraded the software on the existing iPhones, rendering the devices incapable of retaining a charge for any reasonable amount of time.

70. As a result of Apple's breach of its promises in the iOS Software License Agreement, Plaintiff, and all those similarly situated, have suffered damages in the form of the loss of the value of their existing iPhone.

71. Accordingly, Plaintiff, and all those similarly situated, seek damages for Apple's breach of contract.

## COUNT IV

### Breach of the Covenant of Good Faith and Fair Dealing

72. Plaintiff repeats and re-alleges the allegations in paragraphs 1 to 49 above as if fully set forth herein.

73. Apple requires everyone who downloads iOS 11 to agree to the terms of a contract, its iOS Software License Agreement.

74. In the iOS Software License Agreement, Apple promised to provide a software "update" that would facilitate the "use" of existing iPhones.

75. Implied in every such contract, as a matter of law, is a covenant of good faith and fair dealing, by which parties to the contract promise not to violate the spirit of the bargain or to act in such a way that denies the other party the expected the benefit of the contract.

76. Implied in the iOS Software License Agreement is a promise by Apple that the software update will improve the performance of the existing iPhone device or at least not seriously harm its functionality.

14

77. iOS 11 seriously degraded the functionality of existing iPhones to the point of rendering them virtually useless as a mobile device.

78. Accordingly, Plaintiff seeks damages, for herself and all those similarly situated.

## COUNT V

### Violation of California Business & Professions Code § 17200 et seq.

79. Plaintiff repeats and re-alleges the allegations in paragraphs 1 to 49 above as if fully set forth herein.

80. Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class.

81. Plaintiff, as a non-California resident, is entitled to assert this cause of action for Apple's violations of California Business and Professions Code § 17200 et seq. because Apple is a California corporation whose violations of this consumer protection law occurred in California, resulting in harm to Plaintiff and other members of the Nationwide Class outside of California, as well as harm to numerous members of the Nationwide Class within California.

82. California Business & Professions Code § 17200 et seq. (the "UCL") prohibits unfair competition that is any unfair, unlawful, or a fraudulent business practice.

83. Apple violated the "unlawful" prong of the UCL by making material misrepresentations, or by making material omissions of facts, that, if downloaded, Apple's iOS 11 update would not impair or degrade the functioning of existing iPhones, when in fact Apple knew that such impairment or degradation would result, in violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq.

84. Apple's conduct violated the "unfair" prong of the UCL because it was immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff

15

and members of the Nationwide Class. Apple's practice was also contrary to legislatively declared and public policy and the harm it caused to consumers outweighed its utility, if any.

85. Apple violated the "fraudulent" prong of the UCL by making material misrepresentations and actively concealing material information regarding its practice that, if downloaded, Apple's iOS 11 update would not impair or degrade the functioning of existing iPhones, when in fact Apple knew that such impairment or degradation would result. These material misrepresentations and nondisclosures were likely to mislead consumers.

86. Apple's misrepresentations and nondisclosures deceive or have a tendency to deceive the general public.

87. Apple's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase and product-updating decisions.

88. Plaintiff and the Nationwide Class members reasonably relied on Apple's material misrepresentations and/or nondisclosures, in that, had they known the truth, they would not have elected to download the iOS 11 update and/or would not have purchased new or additional iPhone items after their existing iPhone had been impaired and degraded by having downloaded the iOS 11 update.

89. As a direct and proximate result of Apple's unfair, unlawful, and fraudulent conduct, Plaintiff and the members of the Nationwide Class have lost money and/or property. Specifically, as a proximate result of Apple's violations, Plaintiff and the members of the Nationwide Class have, among other things, paid more for their affected iPhones than they would have had Apple not engaged in its violative conduct, and/or have purchased new or

16

additional iPhones or related battery-life products that they would not have otherwise purchased had Apple not engaged in its violative conduct.

90. Apple's conduct caused substantial injury to Plaintiff and the members of the Nationwide Class. Accordingly, Plaintiff seeks an order enjoining Apple from committing such unlawful, unfair, and fraudulent business practices immediately and in the future; to provide all potentially-affected iPhone owners with reasonable notice that the poor performance of those devices is caused by Apple's own modifications; to reimburse all Nationwide Class members the full purchase price they paid for those affected and potentially-affected devices; to provide all class members with new iPhone batteries for those devices, free of charge; and/or to make full restitutionary disgorgement of profits wrongfully obtained, including all applicable pre- and post-judgment interest. Plaintiff also seek attorneys' fees and costs, for herself and the Nationwide Class members, under Cal. Code Civ. Proc. § 1021.5.

## COUNT VI

### Violation of California Business & Professions Code § 17500 et seq.

91. Plaintiff repeats and re-alleges the allegations in paragraphs 1 to 49 above as if fully set forth herein.

92. Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class.

93. Plaintiff, as a non-California resident, is entitled to assert this cause of action for Apple's violations of California Business and Professions Code § 17500 et seq. because Apple is a California corporation whose violations of this consumer protection law occurred in California, resulting in harm to Plaintiff and other members of the Nationwide Class outside of California, as well as harm to numerous members of the Nationwide Class within California.

17

94. Apple has committed acts of untrue and misleading advertising, as defined by California Business and Professions Code § 17500 et seq., including by making material misrepresentations that battery life would not be impaired or degraded if a customer downloaded Apple's iOS 11 update on his or her existing iPhone, and by failing to disclose and/or actively concealing material information regarding the battery-life effect of a customer downloading the operating system update.

95. Apple's misrepresentations and nondisclosures deceive or have a tendency to deceive the general public.

96. Apple's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making the decision whether to download an operating system update and/or whether to make subsequent iPhone-related purchase decisions from Apple.

97. Plaintiff and members of the Nationwide Class reasonably relied on Apple's material misrepresentations and/or nondisclosures, and had they known the truth, would not have elected to download iOS 11 and/or would not have purchased new or additional iPhone items after their existing iPhone had been impaired and degraded by their having downloaded the operating system update on their existing iPhone.

98. As a direct and proximate result of Apple's conduct, Plaintiff and the members of the Nationwide Class lost money or property.

99. Apple's conduct caused substantial injury to Plaintiff and members of the Nationwide Class. Accordingly, Plaintiff seeks an order enjoining Apple from committing such unlawful, unfair, and fraudulent business practices immediately and in the future; to provide all potentially-affected iPhone owners with reasonable notice that the poor battery-life of their

18

devices is caused by Apple's own modifications; to reimburse all Nationwide Class members the full purchase price they paid for those affected and potentially-affected devices; to provide all class members with new iPhone batteries for those devices, free of charge; and/or to make full restitutionary disgorgement of profits wrongfully obtained; including all applicable pre- and post-judgment interest. Plaintiff also seeks attorneys' fees, for herself and the Nationwide Class, and costs under Cal. Code Civ. Proc. § 1021.5.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, hereby demands:

a) certification of the proposed Class and Subclasses;

b) appointment of the Plaintiff as a representative of the Class and Subclasses;

c) appointment of the undersigned counsel as class counsel;

d) an order enjoining Apple from engaging any further in the unlawful conduct set forth herein;

e) a declaration that Apple's actions described above violate the FDUPTA;

f) restitutionary disgorgement of all profits wrongfully obtained;

g) an award to Plaintiff, the Class and Subclasses of all damages, including attorneys' fees, recoverable under applicable law;

h) such other relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all applicable claims.

Dated:  December 28, 2017.

19

Respectfully submitted,

| | |
|---|---|
| *s/ Richard B. Rosenthal* | *s/ Stephen F. Rosenthal* |
| Richard B. Rosenthal | Stephen F. Rosenthal |
| Florida Bar No. 0184853 | Florida Bar No. 0131458 |
| California Bar No. 203089 | Matthew P. Weinshall |
| THE LAW OFFICES OF | Florida Bar No. 84783 |
| RICHARD B. ROSENTHAL, P.A. | PODHURST ORSECK, P.A. |
| 1581 Brickell Avenue, Suite 1408 | One S.E. 3rd Avenue, Suite 2300 |
| Miami, FL 33129 | Miami, FL 33131 |
| Tel.: 305-992-6089 | Tel.: 305-358-2800 |
| rbr@rosenthalappeals.com | srosenthal@podhurst.com |

20

Podhurst Orseck, P.A.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Ft Lauderdale 954.463.4346    www.podhurst.com